# Chambers *v.* Seay.

*Action on the Case by Agent against Principal for Wrongful Revocation of Power of Attorney to sell Lands.*

1. *Revocation of agency; commissions to agent.*—As a general rule, a principal who has empowered an agent to sell, may, at any time before sale, revoke the agent's authority; and when the commissions of such agent are payable only in the event of success, a revocation of the agency before a sale destroys the right to them.

2. *Same; power coupled with an interest.*—It is a general rule that a principal can not revoke a power conferred on an agent, when such power is coupled with an interest; but to come within this rule, the power conferred must create an interest in the thing itself, or in the property which is the subject of the power; and hence, under a power to sell, an interest

[Chambers v. Seay.]

in the proceeds of sale, in the event of a sale, as compensation to the agent for effecting it, is not such an interest as will render the power irrevocable.

3. *Agency to sell lands; when revocable.*—An owner of lands containing valuable deposits of iron ore, by a written instrument, authorized and empowered an agent to sell the lands, the agent agreeing to undertake the sale, and, to this end, to transport specimens of the ore to England for inspection, and there to advertise the lands for sale; and, by way of compensation for his services and expenses, it was stipulated that the agent should receive "an undivided one-fourth interest in the proceeds of sale, when sold as aforesaid." *Held*, that the agent's authority was not coupled with an interest in the lands, and that the agency was revocable at any time before a sale under the power.

4. *Same.*—The fact that in such instrument it was expressly stipulated that the agent's power to sell should be "exclusive," does not render the power irrevocable; as, in the case of a naked power, an express declaration of irrevocability will not destroy the principal's right of revocation.

5. *Suit by agent against principal for revocation of agency; when can not be maintained.*—Such agency having been revoked before the agent had effected a sale, and the principal himself having afterwards sold the property, it was further held, that the agent was not entitled to the commissions stipulated in the written power; and that, in an action on the case brought by him to recover such commissions, the gravamen of which was the wrongful revocation of the power by the principal, he could not recover for labor performed and expenses reasonably incurred by him in his efforts to sell the land under the power, although such recovery might be had under a different state of pleadings.

6. *Assumpsit and case can not be joined.*—Counts in *assumpsit* can not be joined with counts in case.

APPEAL from Talladega Circuit Court.

Tried before Hon. LeRoy F. Box.

This was an action by George W. Chambers against John L. Seay; was founded on a contract executed by and between the parties, the material terms of which are stated in the opinion; and was commenced on 24th March, 1880. The complaint as amended contains six counts. The first count, after setting out the contract *in haec verba*, and averring the execution thereof, the ownership of the property therein described by the defendant, and his right to sell and convey the same, and to enter into the stipulations in said agreement contained, and that the plaintiff had "performed and fulfilled all things on his said part and behalf in said agreement to be performed and fulfilled by him," proceeds as follows: "Yet, the said defendant, contriving and intending to defraud the said plaintiff in this behalf, did not perform or regard the said agreement, or his said promise or undertaking, but deceived the plaintiff in this: That the defendant has heretofore, and since the making of said agreement, sold, and did sell the said property to another person, whereby the plaintiff was hindered and prevented from selling the said property under and by virtue of said agreement; so that, by reason of the premises, plaintiff not only lost, and

[Chambers v. Seay.]

was deprived of the profits, benefits and advantages that might, and would otherwise have arisen and accrued to plaintiff from the performance of the said agreement, but was forced and obliged to perform, and did perform services for the defendant, and necessarily to expend, and did expend a large sum of money, to-wit : ———— dollars, in endeavoring to sell said property under said agreement ; and that defendant has been, and is, by reason of the premises, otherwise injured in the sum of five thousand dollars; and hence this suit."

In the fifth count, the contract is also set out *in hæc verba*, and its execution by the parties, and the ownership of the property by the defendant, and his right to sell and convey the same, are averred.      Then, after alleging that the property was chiefly valuable on account of almost inexhaustible deposits of iron ore therein, of a superior quality, and the right of the plaintiff, under the contract, to a reasonable time, within which to advertise and sell the property, the scarcity of markets for such property, and the difficulties in the way of finding a purchaser, his efforts to sell both at home and abroad, including advertisements of the property by him, etc., all at considerable detail, the plaintiff further avers, that "of his actings and doings in this behalf the said Seay was well informed, and he well knew that plaintiff was engaged in a special effort to sell said property to one or the other of two large iron works on the line of the Selma, Rome & Dalton railroad, and within a few miles thereof ; and while he was thus diligently engaged in his undertaking to sell said property, said Seay, on, to-wit, the 18th day of January, 1880, took advantage of his knowledge of what plaintiff was doing, as aforesaid, to secure a sale of said property to one or the other of said iron works, and on said last named day, or about that day, said Seay sold said iron property to one Stephen S. Glidden, or to a company for which he was acting, for a large sum of money, to-wit, about the sum of $20,000.      And plaintiff avers that said sale by said Seay was in violation of his, plaintiff's, exclusive right under said contract to sell said property, and that he has been damaged thereby five thousand dollars."      The third and fourth counts are common counts in *assumpsit*, one for work and labor done, and the other for money had and received.      The second and sixth counts are special counts in *assumpsit*, the averments of which need not be stated.      The court having sustained a demurrer to the complaint for misjoinder, the plaintiff amended, by striking out the four counts in *assumpsit*.

There was a judgment for the defendant, on verdict, in the circuit court, from which the plaintiff appealed.      The other facts necessary to an understanding of the points decided,

[Chambers v. Seay.]

and the errors here assigned are sufficiently indicated in the opinion.

Parsons & Parsons and Sam'l F. Rice, with whom were Bradford & Bishop, for appellant. (1) The agreement on which the action is founded, is more than a revocable power of attorney; it is really a *special and valid contract*, whereby the appellee gave to the appellant the *exclusive* right to sell the property therein mentioned, subject only to the ratification of appellee, or his personal representative, " if they deem *the price* to be paid for said property *sufficient* to warrant a sale." *Hunt v. Rousmanier's Adm'r*, 8 Wheat. 174. The contract is valid, and is supported by a sufficient consideration.—*Brooks v. Ball*, 18 Johns. 337; *McKeen v. Harwood*, 15 Ala. 792; *Rutledge v. Townsend*, 38 Ala. 716, and authorities cited; *Thomason v. Dill*, 30 Ala. 455; *Erwin & Williams v. Erwin*, 25 Ala. 236; 1 Brick. Dig. 382, § 114. (2) Under the contract the appellant had a reasonable time, within which to negotiate of sale of the property.—1 Brick. Dig. 397, § 281; *Skinner v. Bedell*, 32 Ala. 44; *Henley v. Bush*, 33 Ala. 636. Whether he had a reasonable time, was a question for the jury, which the court below, in its charge, excluded from their consideration. (3) Each of the counts upon which the trial was had (the first and fifth), is " in case, the gravamen of which" consists in " a breach of duty arising out of an employment" by appellee of the appellant to sell the property of appellee mentioned in those counts. Each count " states the facts out of which the legal obligation arises, the obligation itself, and the damage resulting" from the breach of that obligation.—*Myers v. Gilbert*, 18 Ala. 467; *Morgan v. Patrick*, 7 Ala. 185; *Davis v. Ayres*, 9 Ala. 292; *Moseley v. Wilkinson*, 24 Ala. 411. (4) The right of the plaintiff to recover in this action for services rendered and expenses incurred, the defendant having arrested and prevented, as is claimed, the full performance of the contract, and the measure of his damages, discussed, and following authorities cited.—2 Smith's Leading Cases (7th Am. Ed.) pp. 45, 46, 53, and cases there cited; Story on Agency (8th Ed.), § 329, and notes 3 and 4; *Canada v. Canada*, 6 Cush. 15; *Hall v. Rupley*, 10 Barr, 231; *Prickett v. Badger*, 1 J. Scott, N. S., 296 (87 C. L. R. 296); *Lockwood v. Levick*, 8 J. Scott, N. S., 603 (98 C. L. R. 603); *DeBernardy v. Harding*, 8 Exchequer (W., H. & G.), 822; *Myers v. Gilbert, supra; Clark v. Marsiglia*, 1 Denio, 317; *Davis v. Ayres, supra; Moseley v. Wilkinson, supra;* 1 Chitty's Plead. (16 Am. Ed.) 151, 152, and cases there cited in note; *Wiley v. Bank*, 47 Vt. 552; 22 How. (U. S.) 69; 43 Barb. 529; 13 How. (U. S.) 340; *Lane v. Albright*, 49 Ind. 275; s. c. 53 Ind. 294.

[Chambers v. Seay.]

BOWDEN & KNOX, *contra.* (1) The first and· fifth counts were in case.—1 Chitty's Plead. p. 135; *Wilkinson v. Moseley,* 18 Ala. 290; *Whilden v. National Bank,* 64 Ala. 26; *Mast v. Goodson,* 3 Wils. 348; *New Orleans, etc., R. R. Co. v. Hurst,* 36 Miss. 660; 2 Black. Com. p. 153; 5 B. & C. 608. (2) As a general proposition it is certainly true, that the principal has a right to determine or revoke the authority given to his agent, at his own will and pleasure. This is so plain a doctrine of common sense and common justice, says Mr. Story, that it requires no illustration or reasoning to support it.—Story on Agency, § 210. To the proposition thus stated there is an exception, and that is, to use the language of the author just quoted, "where the principal has expressly stipulated that the authority shall be irrevocable and the agent has an interest in its execution. Both these circumstances must concur; for although in its terms an authority may be expressly declared to be irrevocable, yet, if the agent has no interest in its execution, and there is no valid consideration for it, it is treated as a mere nude pact, and is deemed in law to be revocable upon the general principle, that he alone who has an interst in the execution of an act is also entitled to control it."—Story on Agency, § 476. The contract fixes no time within which the property must be sold, and prescribes no period for the termination of the agency; and it is settled law, that, in the absence of such provision, the relation of principal and agent continues only during the pleasure of the parties.—*Coffin v. Landis,* 46 Penn. St. 426; *Peacock v. Cummings, Ib.* 434. (3) The appellant had no such interest coupled with his power to sell as would render his agency irrevocable.—*Hunt v. Rousmanier,* 8 Wheat. 204 The following authorities cited and discussed on this point: *Saltmarsh v. Smith,* 32 Ala. 404; *Scruggs v. Driver,* 31 Ala. 274; *Smyth v. Craig,* 3 Watts & Serg. 14; *Blackstone v. Buttermore,* 53 Penn. St. 266; *Hartley and Minors' Appeal, Ib.* 212; *Irwin v. Workman,* 3 Watts, 357; *Brookshire v. Voncannon,* 6 Ired. (Law) 231; *Coffin v. Landis, supra; Peacock v. Cummings, supra; Macgregor v. Gardner,* 14 Iowa 340. (4) The pleadings upon which the cause was tried present no question as to the right of plaintiff to recover on ·a *quantum meruit,* for work and labor done, or money had and received, by defendant from plaintiff, before the agency was terminated by Seay. If he had been a faithful agent, and the pleadings had been properly framed for that ·purpose, it may be that he would have been entitled to such recovery; but the only counts that could raise this question have been stricken from the complaint by amendment, and it does not arise on the present record.

[Chambers v. Seay.]

SOMERVILLE, J.—The main contention in this case involves the right of the principal to revoke the agent's authority to sell, so as to deprive the latter of his commissions.

The agreement, which is the basis of this suit, is in writing, bearing date February 28, 1878, and is signed by both the plaintiff and defendant. Its substance is briefly as follows: Seay was the owner of a tract of land in Talladega county, valuable for the quantity of iron ore it was known to contain. He placed this land in the hands of Chambers for sale, subject to Seay's ratification, if he (Seay) should "deem the price to be paid for said property sufficient to warrant a sale." Chambers, on his part, agreed to undertake the sale of the land, and to this end undertook and promised to transport specimens of ore taken from it to Birmingham, England, for inspection there; and also to advertise the property in one respectable paper in each of the cities of Birmingham and London, England. By way of compensation for his services and expenses, it was stipulated that Chambers should receive "an undivided one-fourth interest in *the proceeds of sale* when sold as aforesaid," and his right to sell was made "exclusive."

The evidence tends to show that Seay revoked the agency of Chambers in January, 1880, and very soon afterwards himself sold the property to one Glidden for the sum of twenty thousand dollars. The circuit court charged the jury, that the agreement in question was a mere *revocable* agency, which could be recalled by the principal, Seay, at any time before it had been executed by his making a sale of the property; and if it was so revoked prior to the sale made by Seay to Glidden, then Chambers was not entitled to recover any commissions.

The rule is not denied, that, in ordinary cases, a principal, who has empowered an agent to sell, may at any time before sale revoke the agent's authority. It is equally true that the usual theory of commissions is, that the agent is to receive them only in the event of success.—Wood's Mayne on Damages (Amer. Ed.), §§ 746–747.

It is argued that the present agreement does not come within this general rule, because it confers on the agent a power coupled with an interest, and that such a power is irrevocable. It is a generally admitted proposition of law, that a principal is not permitted to revoke the authority of his agent, where such authority is *coupled with an interest*, or where it is *necessary to effectuate a security*.—Ewell's Evans on Agency, marg. page, 83. These are the two established exceptions, which seem, indeed, to be essentially similar in principle. It is contended that the agency of the plaintiff, Chambers, comes within the influence of the first exception, as being coupled with an interest, and it was not competent, therefore, for Seay to revoke

[Chambers v. Seay.]

it. It is not any interest, however, that will suffice to render an agency irrevocable. An interest in the proceeds of sale, or money derived from the sale of property by an agent is not sufficient for this purpose.—*Barr v. Schroeder*, 32 Cal. 609; *Hartley's Appeal*, 53 Penn. St. 212; *Gilbert v. Holmes*, 64 Ill. 549. To be irrevocable, it seems now well settled, that the power conferred must create *an interest in the thing itself*, or in the property which is the subject of the power. In other words, "the power and estate must be united and co-existent," and, possibly, of such a nature that the power would survive the principal in the event of the latter's death, so as to be capable of execution in the name of the agent.—*Blackstone v. Buttermore*, 53 Penn. St. 266; *Bonney v. Smith*, 17 Ill. 531; *Mansfield v. Mansfield*, 6 Conn. 559; *Hunt v. Rousmanier*, 8 Wheat. 174; Evans on Agency (Ewell), marg. page, 83, *note*, and p. 85; *Raleigh v. Atkinson*, 6 M. & W. 670. In *Hunt v. Rousmanier*, *supra*, such a power was defined by Chief Justice Marshall to be one "engrafted on an estate in the thing itself."

The power conferred on Chambers was not of this nature very clearly. He had no interest in the subject-matter of his agency, the land itself. He was interested only in the money to be derived as the proceeds of the sale of the land, which could only be realized by the completion of his agency, or by some negotiation which was tantamount to it. He had parted with no money, or other value, for the security of which the power of sale was conferred in the agreement. He had risked in the venture of his agency only his personal services and the expenses incidental to its execution. The undertaking to transport specimens of iron ore to England, and to advertise the lands there, may be embraced as a part of the ordinary expense to be incurred in the usual course of such an employment. It is fair to presume that he risked this much in view of the large compensation to be reaped as commissions, in the event of a successful sale.—*Simpson v. Lamb*, 17 C. B. 603.

It is insisted further that the agency is rendered irrevocable by reason of the fact, that the power of sale conferred on Chambers was stipulated to be *exclusive*. This can not be stronger than the use of the word "irrevocable," which has been construed to fail of such a purpose, unless the agency comes with the exceptions above discussed. In the case of a naked power, an express declaration of irrevocability will not prevent revocation.—*McGregor v. Gardner*, 14 Iowa, 326; *Blackstone v. Buttermore*, 53 Penn. St. 266.

The chief difficulty arises in those cases where the agent has incurred trouble and expense in the execution of his agency, and has been prevented from effecting a sale by the interference of his principal, whether by revocation of his authority, or

[Daniel v. Stough.]

otherwise. It is not just, it is true, for a principal to revoke an agent's authority without paying him for labor and expense reasonably incurred in the course of the agent's employment. Unless otherwise stipulated, the agent may, in a proper form of action, ordinarily claim reimbursement for the value of these.—Evans' Agency (Ewell), marg. p. 83–84. So where a sale of property is brought about by the advertisements or exertions of a broker or agent, the broker being the efficient cause of the sale, and the purchaser being found through his instrumentality, he may often recover his commissions.—*Sussdorff v. Schmidt*, 55 N. Y. 319; *Earp v. Cummins*, 54 Penn. St. 394. These are mentioned as just qualifications of the general rule, to which we have above adverted, touching the subject of the revocation of an agent's authority by his principal.

The pleadings in the present case, upon which it was tried, are framed very clearly with reference to a recovery of the stipulated commissions promised to Chambers, and the gravamen of the action is, in effect, alleged to be the wrongful revocation of the agency by act of the principal. We need not, for this reason, discuss the question as to the plaintiff's right to recover for the value of his services, or for expenses incurred. The first and fifth counts were obviously actions on the case, and the other counts were in *assumpsit.—Myers v. Gilbert*, 18 Ala. 467. The demurrer for misjoinder was consequently well taken, and was properly sustained by the court.

The rulings of the circuit court were in accordance with the above views, and its judgment must be affirmed.